1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BRAVO COMPANY USA, INC.,

              Plaintiff,

   vs.

BADGER ORDNANCE LLC and MARTIN J.
BORDSON,

          Defendants.

2:14-cv-00387-RCJ-GWF

**ORDER**

This case arises from Plaintiff's alleged infringement of two patents owned by Defendant Martin J. Bordson ("Bordson") for assault rifle handles.  Pending before the Court are Bordson's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 37) as well as Plaintiff Bravo Company USA Inc.'s ("Bravo") Motion to Amend (ECF No. 38) and Motion to Seal (ECF No. 41).

**I.      MOTION TO AMEND**

As a preliminary matter, the Court must address the docketing issue of whether Bravo should be given leave to amend its complaint.  Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  It instructs further "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  This rule is interpreted quite liberally, *see Foman v. Dvais*, 371 U.S.

1

1    178, 182 (1962), and leave is generally denied only in instances of (1) bad faith or dilatory

2    motive on the part of the movant; (2) undue delay in filing the motion; (3) prejudice to the

3    opposing party; and (4) the futility of the proposed amendment. *Roth v. Marquez*, 942 F.2d 617,

4    628 (9th Cir. 1991).

5              In this case, Bordson has filed a non-opposition to Bravo's Motion to Amend indicating

6    that he does not oppose amendment. (Non-Opposition 1–2, ECF No. 42).  Furthermore, there is

7    no evidence of bad faith or undue delay given that the Motion is made so that the operative

8    complaint in this case might incorporate the information collected during the limited discovery

9    that the Court allowed on the jurisdictional issue. (*See* June 16, 2014 Order, ECF No. 26).  The

10   Court, therefore, grants the Motion and will consider the First Amended Complaint ("FAC")

11   (ECF No. 38-1) as the relevant pleading in ruling on Bordson's Motion to Dismiss.[1]

12   **II.      MOTION TO DISMISS**

13            **A.  Facts and Procedural History**

14            Bravo manufactures and sells firearm equipment and accessories, including the

15   "Ambidextrous Charging Handle Model A44." (FAC ¶ 3).  A charging handle is a mechanism

16   used to engage the bolt assembly of a firearm so that a preliminary cartridge is loaded into the

17   action. (*Id.* ¶ 4).  Bravo maintains a research and development facility in the State of Nevada. (*Id.*

18   ¶ 1).  Bordson, a resident of Missouri, is the sole owner of U.S. Patent Nos. 7,900,546 B2 ("the

19   '546 Patent") and 7,240,600 B1 ("the '600 Patent"), which covers an ambidextrous charging

20   handle. (*Id.* ¶ 5).  Bravo brought this lawsuit seeking a declaratory judgment of non-infringement

21   and of the invalidity of the '546 Patent and the '600 Patent.

22
23   ---
     [1] Bordson agrees that "the issue of personal jurisdiction under the First Amended Complaint for Declaratory
     Judgment is ripe for decision." (Non-Opposition 2, ECF No. 42).

24

Bravo filed its original complaint on March 14, 2014. (ECF No. 1).  Thereafter, Bordson, and then Defendant Badger Ordnance LLC,[2] moved to dismiss the complaint for lack of personal jurisdiction.  Bordson argued that Bravo failed to show that he had minimum contacts related to the enforcement of the '546 Patent and the '600 Patent in Nevada such that this Court's exercise of jurisdiction would violate the principles of fair play and substantial justice. (Mot. to Dismiss 5–9, ECF No. 12).  The Court ultimately agreed that Bravo had not demonstrated that Bordson engaged in sufficient activities to enforce his patents so as to trigger personal jurisdiction in Nevada. (June 16, 2014 Order 7–9, ECF No. 26).  However, the Court denied Bordson's motion without prejudice and granted Bravo leave to conduct limited discovery regarding the jurisdictional issue. (*Id.* at 10).  Bravo has now conducted its discovery and has submitted the FAC with additional allegations related Bordson's contacts with Nevada.

Bravo alleges that Bordson has established contacts with the forum by: providing charging handles marked with the '600 Patent number for sale by firearm stores in Nevada, (FAC ¶ 10); selling his patented products to Nevada consumers and through Nevada distributors, (*id.* ¶ 11); annually attending the Shooting, Hunting, and Outdoors Tradeshow ("SHOT Show") that is annually held in Las Vegas, Nevada where Bordson markets and sells his products, (*id.* ¶ 12); directing his Nevada-based counsel to threaten legal action and demand that Bravo stop selling the Accused Product, (*id.* ¶ 13); making the Nevada public aware of his patents through his "Web presence" in Nevada, (*id.* ¶ 22); granting patent licenses that give the licensee the right to "make, have made, use, sell, distribute, or offer to sell licensed products" in Nevada, (*id.* ¶ 23); targeting participants of the SHOT Show before the event and sending cease-and-desist

---

[2] Badger Ordnance LLC has since been voluntarily dismissed as a Defendant in this case. (ECF No. 36).

1  letters to discourage them from displaying infringing products, (*id.* ¶ 26); targeting participants

2  of the SHOT Show after the event by sending cease-and-desist letters based on allegedly

3  infringing products that Bordson identified at the SHOT Show, (*id.* ¶¶ 26, 28–30); consulting

4  with his Nevada-based attorney prior to sending cease-and-desist letters, (*id.* ¶ 31); and causing

5  his Nevada-based attorney to receive parcels at the attorney's Nevada office relating to alleged

6  infringing products, (*id.* ¶¶ 33–34).

7       Bravo also claims that this Court has personal jurisdiction over Bordson because on

8  January 21, 2015, Bordson was personally served with the original complaint, summons, Motion

9  to Amend, and the FAC "while he was physically present at the SHOT Show in Las Vegas,

10  Nevada." (Pl.'s Supp. Resp. 2, ECF No. 45-1).  Bordson's personal in-state service is sworn to

11  by the individual that accomplished the service. (Parker Aff. 2, ECF No. 44).  Accordingly, the

12  Court must determine whether Bordson's in-state service necessarily triggers personal

13  jurisdiction in this case, and if it does not, whether Bravo's additionally alleged contacts

14  constitute sufficient enforcement activities to establish personal jurisdiction in this case.

15  **B.  Analysis**

16       Pursuant to Rule 12(b)(2), a defendant may move to dismiss a complaint for lack of

17  personal jurisdiction.  For a court to exercise personal jurisdiction over a non-consenting, absent

18  defendant, the plaintiff must establish that the defendant has sufficient "minimum contacts" with

19  the forum "such that the maintenance of the suit does not offend traditional notions of fair play

20  and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation and

21  citation omitted).  The Due Process clause requires that an individual have fair warning that he or

22  she could be subject to suit in a particular state. *World-Wide Volskwagen Corp. v. Woodson*, 444

23

24

4

U.S. 286, 297 (1980).  "Where a forum seeks to assert specific jurisdiction over an out-of-state

defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the

defendant has 'purposefully directed his activities at residents of the forum . . . and the litigation

results from injuries that 'arise out of or relate to' those activities.'" *Burger King Corp. v.

Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v.

Hall*, 466 U.S. 408, 414 (1984)).

In the context of personal jurisdiction in a declaratory action for non-infringement of a

patent,[3] the Federal Circuit applies these due process standards by utilizing a three-prong test that

inquires whether: "(1) the defendant purposefully directed its activities at residents of the forum,

(2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction

is reasonable and fair."[4] *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356,

1363 (Fed. Cir. 2006) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545–46 (Fed. Cir. 1995).

While it is the plaintiff's burden to establish the first two elements of the test, the defendant must

establish that asserting jurisdiction would be unreasonable or unfair. *Id.*

However, in *Burnham v. Superior Court of California*, 495 U.S. 604 (1990), the Supreme

Court in a plurality opinion reaffirmed the principle that "jurisdiction based on physical presence

alone constitutes due process" and that it is "fair" for a forum to exercise jurisdiction over

anyone who is properly served within the state. 495 U.S. at 610, 619.  The resulting jurisdiction

---

[3] "The issue of personal jurisdiction in a declaratory action for non-infringement is 'intimately related to patent law' and thus governed by Federal Circuit law regarding due process." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006).

[4] "Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001).  Nevada's long-arm statute, NRS 14.065, reaches "the outer limits of federal constitutional due process." *Certain-Teed Prods. Corp. v. Second Judicial Dist. Court*, 479 P.2d 781, 784 (Nev. 1971).  Accordingly, in this case the specific jurisdiction analysis is compressed into a single inquiry of whether it comports with due process. *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1370 (Fed. Cir. 2010).

5

1    would be general rather than specific. *Id.* at 610–11.  Sometimes referred to as "transient

2    jurisdiction," the Court explained that the "traditional notions of fair play and substantial justice"

3    standard articulated in *International Shoe* was developed as an analogy to the physical presence

4    of a defendant. *Id.* at 619.  And it emphasized that traditional notions of fair play are satisfied by

5    the in-state service rule because traditionally, as recognized by the states, "personal service upon

6    a physically present defendant sufficed to confer jurisdiction, without regard to whether the

7    defendant was only briefly in the State or whether the cause of action was related to his activities

8    there." *Id.* at 612.

9            Nevada has adopted the in-state service rule for non-resident defendants. *See* Nev. Rev.

10   Stat. § 14.065(2).  The Nevada Supreme Court has held that "[i]t is well-settled that personal

11   jurisdiction may be asserted over an individual who is served with process while present within

12   the forum state." *Cariaga v. Eighth Judicial Dist. Court of State*, 762 P.2d 886, 887 (Nev. 1988)

13   (citing *Pennoyer v. Neff*, 95 U.S. 714, 718 (1877)).  It also noted that "[t]he doctrine of

14   'minimum contacts' evolved to extend the personal jurisdiction of state courts over non-resident

15   defendants; it was never intended to limit the jurisdiction of state courts over persons found

16   within the borders of the forum state." *Id.* (comparing *Pennoyer*, 95 U.S. at 718 with *Int'l Shoe

17   Co.*, 326, U.S. at 316–17).

18           Here, the Court finds that Bordson's receipt of service of the amended complaint while

19   he was attending the SHOT Show in Las Vegas establishes personal jurisdiction.  Bordson was

20   physically present in Nevada and he was personally served.  Due process in this case requires

21   nothing more. *Id.* at 622.

22           Bordson argues that the January 21, 2015 service cannot create personal jurisdiction over

23

24
                                                    6

1   him because the service was improper.  He argues that because the amended complaint was

2   served more than 120 days after this action was filed, the service is void under Rule 4(m).  The

3   Court disagrees.  Although Rule 4(m) clearly requires that service take place within 120 days

4   after the complaint is filed, that is not the issue here.  Bravo filed its original complaint on March

5   14, 2014. (ECF No. 1).  Bordson was served with that complaint in Missouri on March 19, 2014,

6   five days later and well within the 120 day limit. (ECF No. 8).  The Court denied without

7   prejudice Bordson's first motion to dismiss so that limited discovery on the issue of personal

8   jurisdiction could be conducted. (June 16, 2014 Order, ECF No. 26).

9          On December 22, 2014, Bravo filed its Motion to Amend the original complaint along

10  with the FAC containing the supplemental information obtained during discovery. (ECF No. 38).

11  On January 1, 2015, Bordson filed his non-opposition to Bravo's motion and stated that, indeed,

12  the FAC should be the focus of the Court's inquiry on the present Motion to Dismiss.  Thirty

13  days after it was filed, Bordson was personally served with the FAC within Nevada on January

14  21, 2015.  The service was not improper under Rule 4(m), and more on point, it conformed with

15  Rule 5(a)(1)(B), which requires that pleadings filed after the original complaint be served on

16  every party. *Emp. Painters' Trust v. Ethan Enters., Inc.*, 480 F.3d 993, 999–1000 (9th Cir. 2007)

17  (holding that an amended complaint qualifies as a "pleading subsequent to the original

18  complaint" and that its service is governed by Rule 5 rather than Rule 4); *see also* Fed. R. Civ. P.

19  5(b)(2)(A) (stating that a paper is served under the rule by "handing it to the person").

20         Bordson next argues that even if the personal service was not untimely under Rule 4(m),

21  due process would be violated if he were subject to personal jurisdiction in Nevada.  The Court

22  again disagrees.  Bordson contends that under *Burnham*, courts must still conduct a due process

23

24

7

analysis before blindly exercising personal jurisdiction based on in-state service. He relies on Justice Brennan's concurrence to the *Burnham* plurality for this proposition. *See Burnham*, 495 U.S. at 638–39 (Brennan, J., concurring). However, applying Justice Brennan's reasoning to Bordson's case produces the same result. Justice Brennan reasoned that the transient rule, which has been in place "for perhaps a century . . . provides a defendant voluntarily in a particular State today 'clear notice that he is subject to suit in the forum.'" *Id.* at 636–37 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). "The transient rule is consistent with reasonable expectations and is entitled to a strong presumption that it comports with due process." *Id.* at 637.

Justice Brennan further reasoned that personal jurisdiction premised on in-state service satisfies due process because, "[b]y visiting the forum State, a transient defendant actually 'avails' himself of significant benefits provided by the State. His health and safety are guaranteed by the State's police, fire, and emergency medical services; he is free to travel on the State's roads and waterways; he likely enjoys the fruits of the State's economy as well." *Id.* at 637–38. Thus, although Justice Brennan argued that a due process analysis rather than tradition alone subjects defendants served within a state to personal jurisdiction in that forum, he nonetheless concluded that "as a rule the exercise of personal jurisdiction over a defendant based on his voluntary presence in the forum will satisfy the requirements of due process." *Id.* at 639.

On January 21, 2015, Bordson was voluntarily present in Las Vegas to attend the SHOT Show, something that he had done routinely for at least the past four years. (Bordson Decl. 13:25–14:7, ECF No. 40-2). During his stay in Nevada, he availed himself of the various amenities that the state provides, as well as Nevada's economy. Had Bordson been served with

process related to a state action while in Las Vegas, Nevada courts would certainly have found personal jurisdiction. *Cariaga*, 762 P.2d at 887.  Accordingly, this Court may likewise exercise personal jurisdiction over Bordson. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998).

Finally, the Court notes that even if Bordson had not been personally served with the amended complaint in Las Vegas, the record developed through discovery supports a finding of personal jurisdiction here.  Bordson's attempts to market and sell patented products in Nevada cannot create personal jurisdiction in a declaratory action for non-infringement. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).  Likewise, cease-and-desist letters alone are generally insufficient to trigger specific personal jurisdiction even when directed at a forum. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1019 (Fed. Cir. 2009).  Yet when cease-and-desist communications are coupled with "'other activities' that relate to the enforcement or the defense of the validity of the relevant patents," the assertion of personal jurisdiction is warranted. *Avocent*, 552 F.3d at 1334.

The SHOT Show is a very important event for the gun-making industry. (Kincel Decl. ¶ 5, ECF No. 16-8).  Both Bordson and his Nevada-based counsel regularly attend the SHOT Show, which has taken place in Las Vegas for the past few years. (Bordson Decl. 45:12-13).  It appears from the record that Bordson routinely used the SHOT Show as a venue to identify potential infringers and that he, through counsel, made efforts to discourage potential infringers from displaying their products at the SHOT Show by sending cease-and-desist letters only days before the event. (*See* Jan. 10, 2013 Letter, ECF No. 40-3, Ex. B; Jan. 11, 2013 Letter, ECF No. 40-2, Ex. C).  Further, after attending the SHOT Show each of the past few years, Bordson

9

requested samples of those products he felt violated his patents so he could evaluate them, and his Nevada-based counsel, at least in some cases, received samples of those products at his Nevada office so that the attorney could conduct an analysis as well. (June 20, 2013 Email, ECF No. 40-20, Ex. O).

Thereafter, and within a few short weeks of each SHOT Show, Bordson's counsel sent cease-and-desist letters to the companies responsible for manufacturing the products that Bordson identified at the SHOT Show. (*See* Mar. 27, 2012 Letter, ECF No. 40-15, Ex. L; Jan. 21, 2013 Email, ECF No. 40-10, Ex. G; Feb. 28, 2014 Letter, ECF No. 40-11, Ex. H; Mar. 1, 2014 Letter, ECF No. 40-13). From the record, it seems that this was Bordson and his attorney's practice in at least 2012, 2013, and 2014. (*See id.*; Bordson Decl. 28:10–21).

A patentee who travels to a particular forum on a routine basis, identifying potentially infringing products each time, and who then engages an attorney located in that forum to be an enforcement agent has likely engaged in sufficient "other activities" for personal jurisdiction to be triggered. *Avocent*, 552 F.3d at 1334. In such a situation, it should come as little surprise to the patentee that he is required to defend himself against a declaratory judgment action for non-infringement in the forum he repeatedly utilized to identify products potentially infringing his patent. *Burger King Corp.*, 471 U.S. at 472 (emphasizing that a defendant has fair warning that he may be subjected to suit in a particular forum when he directs activities at that forum); *Autogenomics, Inc.*, 566 F.3d at 1020 (stating that activities relevant to specific personal jurisdiction in a patent non-infringement case are those that the defendant purposefully directs at the forum "which relate in some material way to the enforcement or defense of the patent").

Therefore, for the foregoing reasons, the Motion to Dismiss is denied.

10

1

**CONCLUSION**

2       IT IS HEREBY ORDERED that Bordson's Motion to Dismiss for Lack of Personal

3   Jurisdiction (ECF No. 37) is DENIED.

4       IT IS FURTHER ORDERED that Bravo's Motion to Amend (ECF No. 38) is

5   GRANTED.

6       IT IS FURTHER ORDERED that Bravo's Motion to Seal (ECF No. 41) is GRANTED.

7       IT IS SO ORDERED.

8

9   Dated:  March 25, 2015

10

11                                        _____
                                           ROBERT C. JONES
12                                         United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

11